## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Susan Sherry Sabhari, individually, and
Ali Abdulla Sabhari, individually,

        Plaintiffs,

    v.

Denise Frazier, District Director, Citizenship
and Immigration Services; Eduardo Aguirre,
Director, Citizenship & Immigration
Services; Michael Chertoff, Secretary,
Department of Homeland Security;
Alberto Gonzales, United States Attorney
General,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 06-196 ADM/RLE

_____

Herbert Igbanugo, Esq., Blackwell Igbanugo, P.A., Minneapolis, MN, argued on behalf of
Plaintiffs.

Robyn A. Millenacker, Esq., Assistant United States Attorney, Minneapolis, MN, argued on
behalf of Defendants.

_____

## I. INTRODUCTION

On August 28, 2006, oral argument before the undersigned United States District Judge

was heard on Plaintiffs Susan Sherry Sabhari ("Sherry") and Ali Abdulla Sabhari's ("Sabhari")

(collectively "Sabharis") Motion for Summary Judgment [Docket No. 17]; and Defendants'

Motion for Summary Judgment [Docket No. 11].  On January 11, 2006, the Sabharis filed a

Complaint for Declaratory Review of Visa Petition Denial by CIS District Director [Docket No.

1].  For the reasons set forth herein, the Sabharis' Motion is granted and Defendants' Motion is

denied.

## II. BACKGROUND

This is the second occasion the Sabharis have appeared before this Court, seeking review of the Immigration and Naturalization Service ("INS")[1]/Board of Immigration Appeals' ("BIA") denials of Sherry's I-130 petitions. The facts of this eleven-year-old saga were comprehensively set forth in the Court's June 10, 2005 Order, and are recited again herein. Sabhari v. Cangemi, Civ. No. 04-1104, 2005 WL 1387595, at *1-4 (D. Minn. June 10, 2005).

### A.      Sabhari's Arrival in the United States

On November 25, 1993, Sabhari was admitted to the United States from Kuwait on a visitor visa that expired May 25, 1994. Admin. R. [Docket No. 15] at 917. At the time of his arrival, Sabhari was married to Kahdija Mirza Ali Mohammed ("Mohammed") and had four children, all of whom remained in Kuwait. Id. at 826, 1699. On June 18, 1995, Sabhari divorced Mohammed by proxy. Id. at 826, 1462. Shortly thereafter, on July 14, 1995, Sabhari married Sherry in Minneapolis, Minnesota. Id. at 748.

### B.      First Form I-130 Petition

On July 31, 1995, Sherry filed a Form I-130 Alien Relative Visa Petition to adjust Sabhari's immigration status on the basis that they were husband and wife. Id. at 753. Sabhari concurrently filed a Form I-485 Application to Register Permanent Residence or to Adjust Status. Id. at 2373-76. After interviewing Sabhari and Sherry in October 1995, an INS

---

[1] The INS ceased to exist on March 1, 2003, and its functions were transferred to U.S. Citizenship and Immigration Services ("CIS") and U.S. Immigration and Customs Enforcement ("ICE"), divisions of the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). For clarity, the Court will primarily refer here to the INS, as it was the name of the entity at the time of most of the events in this case.

Adjudications Officer requested an investigation into the validity of Sabhari's divorce with

Mohammed.  See Adjudications Field Manual ("AFM"), U.S. Dept. of Justice, Immigration and

Naturalization Service, Chapter 10.5.  At a January 1996 interview conducted by officials from

the United States Embassy in Kuwait, Mohammed claimed Sabhari went to the United States to

obtain permanent residency, that Mohammed and Sabhari had agreed to divorce until he

obtained permanent residency status with the intent they would remarry, and that Sabhari was

paying Sherry $350 per month.  Admin. R. at 1411.  Shortly thereafter, the INS Acting District

Director issued a Notice of Intent to Deny ("NOID") the visa petition after finding the marriage

to Sherry was not a bona fide marriage but was a fraud for immigration purposes.  Id. at 735.

In response to the NOID, the Sabharis filed a March 26, 1996 affidavit in which

Mohammed recanted her earlier statements regarding the validity of the divorce.  Id. at 1177.

Mohammed claimed she did not understand the questions she was asked and that the American

officials had recorded her responses falsely.  Id.  The Sabharis also submitted numerous

affidavits attesting that their marriage was bona fide.  Id. at 849-71.  In May 1996, the INS

received unsolicited letters from Sabhari's sister, Horai Abdullah Saheri ("Saheri"), who lived in

Kuwait, and Sabhari's brother, Matt Sapari ("Sapari"), an American citizen.  Id. at 739, 1325.

Saheri's letter averred Sabhari married Sherry to obtain permanent residency and that he

ultimately intended to divorce her and remarry Mohammed.  Id. at 1325.  Sapari's letter

explained Sabhari intended to marry an American woman while leaving his wife and four

children in Kuwait.  Id. at 739.  On June 14, 1996, Sapari called the INS to report Sabhari had

threatened to "ruin him" if he disclosed Sabhari's intent to circumvent immigration law to the

INS.  Sapari also reported that, on June 12, 1996, Sabhari had falsely testified under oath in a

court dispute between the brothers that he had his green card.  Id. at 1330.  Sapari subsequently provided copies of Sabhari's March 13, 1996 deposition and June 12, 1996 trial testimony in which Sabhari was asked whether he has a wife and children.  Id. at 1307-17.  Although Sabhari had been married to Sherry for nearly a year, Sabhari responded that he had a wife and children who lived in Kuwait.  Id. at 1311.

In July 1996, the INS received an unsolicited letter from Dana Sapari, Matt Sapari's wife, in which she stated Sabhari intended to marry an American wife to obtain a green card.  Id. at 1318.  She claimed Mohammed had explained to her that, due to Sabhari's "Bedoun" heritage, their children would enjoy more opportunity in the United States than in Kuwait.  Id. at 1319.  Around the same time, the INS received a January 8, 1989 document giving Sabhari power of attorney over Mohammed's affairs.  Id. at 766.  The power of attorney was apparently still in effect in 1996.  Id. at 199.

Based on this record, on August 28, 1996, the Acting District Director issued a second NOID finding Sabhari and Mohammed's divorce was a sham entered into to thwart immigration law.  Id. at 727.  On September 27, 1996, the Sabharis filed for a Temporary Restraining Order, a Writ of Mandamus, and Declaratory and Injunctive Relief in United States District Court; however, the suit was dismissed on October 7, 1996 for failure to exhaust administrative remedies.  Id. at 1184-86, 1196.  The INS issued a final decision denying the visa petition on December 17, 1996, after concluding the evidence of record supported a finding of a sham divorce leading to a sham marriage.  Id. at 1159-65.

On December 20, 1996, the Sabhari's appealed the final decision to the BIA.  Id. at 1154-57.  The BIA dismissed the appeal and denied a motion for remand on June 2, 1997, after finding

the Sabharis had not met their burden of establishing their marriage was entered into in good faith by both parties.  Id. at 718.

The Sabharis responded by again filing suit in federal court seeking declaratory, injunctive and mandamus relief.  Id. at 710.  On July 2, 1997, while the federal suit was pending, the Acting District Director denied Sabhari's Form I-485 application for permanent residence status.  Id. at 1842-43.  Since Sabhari's I-130 petition was denied, Sabhari was not eligible for status as a legal permanent resident pursuant to 8 C.F.R. § 245.1.  Id. at 1843.  On July 28, 1997, the INS issued to Sabhari a Notice to Appear for Removal Proceedings.  Id. at 2377-78.

On August 21, 1998, the Sabharis' complaint was dismissed by District Court Judge Donald D. Alsop.  Judge Alsop found the court lacked subject matter jurisdiction and, in the alternative, the "record contain[ed] ample evidence to support the INS's conclusion that the marriage was entered into for immigration purposes."  Id. at 715.  On appeal, the Eighth Circuit found the APA provided subject matter jurisdiction to review the BIA's decision.  Sabhari v. Reno, 197 F.3d 938, 941-43 (8th Cir. 1999).  Although the Eighth Circuit noted "there is some evidence in the administrative record . . . to suggest that the Sabharis' marriage was bona fide" it ultimately concluded "the record before the BIA contained ample evidence upon which it could properly rely for its conclusion that Sabhari had failed to show that his marriage to Sherry was not entered for immigration purposes."  Id. at 944.  As a result, the Eighth Circuit affirmed the district court's order and dismissed the action with prejudice.  Id.

## C.    Second Form I-130 Petition

On August 22, 1997, while the lawsuit against the INS was pending before Judge Alsop, the Sabharis filed a second I-130 petition.  Admin. R. at 740.  No concurrent I-485 application

was filed.  The only new evidence submitted was an affidavit of financial support and letters

confirming Sherry's employment.  In May 1999, an Adjudications Officer, Tammie Henning

("Henning") briefly interviewed Sabhari and Sherry.  On May 22, 2000, the INS District

Director denied the petition.  Id. at 2290-95.

On June 14, 2000, the Sabharis filed both a Motion to Reconsider the District Director's

denial and an Appeal of the Denial Decision to the BIA.  Id. at 26-27.  The Motion to Reconsider

was forwarded to the BIA for consideration since jurisdiction vested with it upon the Sabharis

filing of the Notice of Appeal.  Id. at 26.  On September 9, 2002, the BIA dismissed the appeal

finding the denial was supported by the evidence in the record as a whole.  Id.

**D.      Asylum/Withholding of Removal Application**

On December 8, 1998, Sabhari filed an application for asylum, withholding of removal,

and relief under the Convention Against Torture.  Id. at 2326.  On July 19, 1999, an Immigration

Judge ("IJ") denied the petition, finding: (1) Sabhari was removable as a non-immigrant alien

who remained in the United States after the expiration of his visitor visa; (2) the application was

untimely; and (3) Sabhari had "failed to introduce sufficient, concrete or direct evidence to show

that he had a well-founded fear of persecution."  Id. at 2299-322.  The IJ ordered Sabhari be

removed and deported from the United States to Kuwait.  Id.

On July 19, 1999, Sabhari appealed the IJ's decision to the BIA, who affirmed without

opinion on June 28, 2002.  Id. at 111-12, 2363-68.  A Letter to Report for Removal on August

29, 2002 was subsequently issued; however, a Stay of Deportation was issued because Sabhari's

Kuwaiti passport had expired.  Id. at 2369.  The Stay, which continues to be in effect, requires

Sabhari to report to the INS each month.  Id.

6

In September 2002, the Sabharis filed a motion with the BIA arguing that new evidence required the second visa application be reopened, the decision denying the Application for Asylum be reopened, and Sabhari's status be adjusted pursuant to a third I-130 petition and a second I-485 petition.  Id. at 2278-85.  In a September 16, 2002 videotaped interview, Matt Sapari recanted the statements he made in letters to the INS in May 1996, June 1996 and June 1997 averring Sabhari's divorce of Mohammed and marriage to Sherry were shams.  Id. at 576-626, 2282.  He claimed his prior statements, and those of his then wife, were motivated by animosity in the civil suit in which he and Sabhari were then engaged.[2] Id. at 584-87, 611, 2282-83.  He also contended his sister, Saheri, made her statements because she was angry that Sapari was sending her money while Sabhari was not.  Id. at 596-97, 2282.  The BIA denied the Sabharis' Motion on February 10, 2003 after concluding Sapari's recantation was insufficient to overcome the evidence of fraud in the record.  Id. at 2297-98.

The Sabharis subsequently filed a direct review of the INS's asylum decision in the Eighth Circuit.  On September 4, 2003, the Eighth Circuit found it did not have jurisdiction to review the BIA's asylum decision and affirmed the remainder of the agency's decision.  Sabhari v. Ashcroft, 73 Fed. Appx. 904, 904-05 (8th Cir. 2003).

**E.     Third Form I-130 Petition**

On August 13, 2002, the Sabharis filed a third Form I-130 Alien Relative Visa Petition based on marriage.  Admin. R. at 31.  In September 2002, Sabhari also filed a second Form I-485.  Id. at 2379.  The INS District Director issued a NOID on December 2, 2002 noting that, with the exception of medical records dated through July 2002 and statements from medical

---

[2] Matt and Dana Sapari were divorced in 2001.  Sapari Aff. (Compl. Ex. J) ¶ 33.

7

providers dated August 2002, all of the evidence submitted was dated from 2000 or earlier, which preceded the denial of the second I-130 petition.  Id. at 117-95, 272-74.  The NOID concluded the evidence did not establish Sabhari and Sherry's initial intent to enter into a bona fide marriage rather than a sham marriage for the purpose of circumventing immigration law.  Id. at 274.  The District Director also considered Sapari's September 16, 2002 videotaped recantation.  He found Sapari's recounting of a telephone conversation in which Mohammed told him "she would do anything to get Ali back to Kuwait" directly contradicted Mohammed's March 1996 recantation in which she claimed she did not understand the meaning of the questions she was asked by American officials in January 1996.  Id. at 274-75.  The District Director also relied upon statements recorded in Sherry's 1995 medical records which referenced her concerns regarding whether Sabhari was entering into their marriage to obtain permanent residency and noted Sabhari lied during his October 1995 INS interview.  Id. at 171-73, 276.

Although the Sabharis submitted additional materials on December 17, 2002, the District Director issued a denial decision on February 18, 2003, concluding the evidence provided was not new, clear and convincing evidence of their intent at the inception of the marriage.  Id. at 4-24.  The Sabharis did not appeal the decision to the BIA.

**F.      First Action Before This Court**

On March 3, 2004, the Sabharis filed a lawsuit in federal court.  In support of their Complaint [Civ. No. 04-1104, Docket No. 1], the Sabharis submitted a November 11, 2003 affidavit in which Saheri recants her May 1996 statement that Sabhari and Sherry entered into a sham marriage for the purpose of obtaining a green card and that Sabhari intended to subsequently divorce Sherry and remarry Mohammed.  Saheri Aff. (Compl. Ex. M).  She claims

8

her earlier statements to the contrary were motivated by anger towards Sabhari for not sending her money to provide for herself and her children.  See id. at ¶¶ 3-8.  Her brother Sapari had done so and she apparently expected the same of Sabhari.  Id.  In the early morning of March 31, 2005, the INS conducted a bed check at the Sabharis' residence and found Sabhari and Sherry together.[3]  Susan Sabhari Letter (Compl. Ex. K).

## G.      June 10, 2005 Order

On June 10, 2005, the Court dismissed without prejudice the Sabharis' Complaint as to the merits of their APA claims, and remanded the matter to the CIS to reassess the merits of the Sabharis' I-130 petitions.  Sabhari, 2005 WL 1387595, at *9.  The Court held that further review of the Sabharis' first I-130 petition was precluded by res judicata, but that the second I-130 petition was a separate proceeding that had not been adjudicated in federal court, and was subject to review.  Id. at *5-6.  After finding there was strong evidence that exhaustion of administrative remedies would have been futile with respect to the Sabharis' third I-130 petition, the case was remanded to the CIS with specific instructions for administrative review.  CIS was directed to conduct a "fresh and searching determination as to the validity of Sabhari's I-130 petition," considering in particular "(1) whether the ten year length of the Sabharis' marriage evidences their intent upon entering into marriage; (2) the impact of Saheri's recantation; and (3) the reasonableness of the motives provided for the initial statements of Mohammed, Sapari, and Saheri."  Id. at *6, 8.

---

[3]  To help determine whether a marriage is bona fide, the INS may conduct bed checks where agents will show up unannounced in the middle of the night or early morning to see whether the couple is living together.  See April 1, 2005 Letter (Millenacker Decl. [Civ. No. 04-1104, Docket No. 68]).

**H.     CIS Decision on Remand**

On November 15, 2005, the District Director denied Sherry's I-130 petition.  Millenacker

Decl. [Docket No. 14] Ex. B.  With respect to the length of the Sabharis' marriage, the District

Director stated in part:

> Although the District Court ordered the Service to evaluate the length of the marriage, presently 10 years, we note that jurisdiction for this remand is only under the second petition filed in 1997.  At that time, you had only been married two years.
>
> To properly consider the 10 year length of the marriage, there must be jurisdiction under the third petition, which there is not, as you failed to appeal the third petition to the [BIA].
>
> ***
>
> The Service wishes to clarify, however, that although the fact that [a] period of ten years has passed since your July 14, 1995 marriage to SABHARI, it is not possible to wash out the threads of fraud upon which the marriage was initially based.
>
> ***
>
> The Service does acknowledge that you appear to exist as a partnership, if at least in the financial sense.  As the record demonstrates, you have been active in some business and residential transactions.  It is entirely possible that you have entered into an agreement to support one another like friends would in a business endeavor.
>
> Nevertheless, the length of the marriage does *not* indicate that the marriage was entered into in good faith.  You may have merely discovered that you and SABHARI were compatible in the business sense, and in working closely for a number of years, have grown accustomed to, and perhaps fond of one another.
>
> Accordingly, although a thorough review has been made in the context of the length of your marriage, in the exercise of discretion, the Service has determined that the length of your marriage does not negate the fact that Sabhari entered into the marriage for the primary purpose of circumventing the immigration law.

Id. at 6-7.  The District Director also stated that it chose to believe the initial statements of

Mohammed, Sapari, and Saheri, and that their subsequent recantations about the fraudulent

purpose of the marriage were not credible.  Id. at 8-10.  The District Director concluded that (1)

10

the second I-130 petition must be denied pursuant to 8 U.S.C. § 1154(c)(2) and the denial of the

first I-130 petition, and (2) alternatively, that the second I-130 petition was denied in the exercise

of discretion.  Id. at 12.

## I.      The Instant Action

The Sabharis did not appeal the District Director's adverse determination to the BIA, but

filed the instant action on January 11, 2006.  In their Complaint, the Sabharis allege violations of

the Immigration and Nationality Act ("INA") § 201(b), 8 U.S.C. § 1151(b); the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-06; and the Fifth Amendment Due Process and Equal

Protection Clauses.

## III. DISCUSSION

## A.      Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for

summary judgment, the Court views the evidence in the light most favorable to the nonmoving

party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not

"rest on mere allegations or denials, but must demonstrate on the record the existence of specific

facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957

(8th Cir. 1995).

Judicial review of an INS decision denying a petition to change status is governed by the APA, 5 U.S.C. §§ 701-06.  See Sabhari v. Reno, 197 F.3d at 942-43.  "The denial of a petition for preferential immigration classification is reviewed for a determination of whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'"  Gipson v. INS, 284 F.3d 913, 916 (8th Cir. 2002), citing 5 U.S.C. § 706(2).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision."  Bangura v. Hansen, 434 F.3d 487, 502 (6th Cir. 2006), citing Motor Vehicle, 436 U.S. at 42-43.  While an agency must articulate a "rational connection between the facts found and the choice made," a court "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974).

**B.       Jurisdiction**

**1.       8 U.S.C. § 1252(a)(2)(B)(ii)**

As a threshold matter, the Court must determine whether it has subject matter jurisdiction over the Sabharis' claims.  Defendants argue that the REAL ID Act, Pub. L. No. 109-13, Div. B., 1129 Stat. 231 (2005), divests this Court of jurisdiction because the determination of whether the Sabharis' marriage is valid for purposes of an I-130 petition is a non-reviewable, discretionary

act.[4]  8 U.S.C. § 1252(a)(2)(B), as amended by the REAL ID Act of 2005, states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Courts have split over the interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii).  In <u>Zhao v. Gonzales</u>, 404 F.3d 295, 303 (5th Cir. 2005) (emphasis in original), the Fifth Circuit elucidated the types of discretionary decisions barred from review by the statute:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision.  That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority *specified in the statute*.  The statutory language is uncharacteristically pellucid on this score; it does not allude generally to "discretionary authority" or to "discretionary authority exercised *under this statute*," but specifically to "authority for which is *specified under this subchapter* to be in the discretion of the Attorney General."

The Ninth Circuit, in <u>Spencer Enterprises, Inc. v. United States</u>, 345 F.3d 683, 689-90 (9th Cir. 2003), also determined that "the language of the statute in question must provide the discretionary authority," and concluded that the statute barred review of "matters of pure discretion:" matters for which "the right or power to act is entirely within [the Attorney General's] judgment or conscience," and is not guided by legal standards.  The Eighth Circuit has extended the rationale further, concluding that "[w]henever a regulation implementing a

---

[4] While the REAL ID Act of 2005 did amend 8 U.S.C. § 1252(a)(2)(B), the "discretion" section of the statute, recited above, was added to the immigration code by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996 , Pub. L. No. 104-208, 110 Stat. 3009.

subchapter II statute confers discretion upon an IJ, IIRIRA generally divests courts of jurisdiction to review the exercise of that discretion."  Onyinkwa v. Ashcroft, 376 F.3d 797, 799 (8th Cir. 2004), citing CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 619 (6th Cir. 2002).  But see Khan v. Attorney Gen., 448 F.3d 226, 231-33 (3d Cir. 2006) (agreeing with the Second, Fifth, Ninth, and Eleventh circuits that discretionary authority must be specified in the statute, not just the regulation).  Accordingly, in this circuit, courts are barred from reviewing decisions that are specified to be discretionary in subchapter II of Chapter 12 of Title 8, which includes 8 U.S.C. §§ 1151-1378, and in regulations implementing those statutes.  See Onyinkwa, 376 F.3d at 799.

The statutes at issue in this case do fall within subchapter II of Chapter 12 of Title 8.  8 U.S.C. § 1151(b)(2)(A)(i) defines "immediate relatives" as "the children, spouses, and parents of a citizen of the United States."  8 U.S.C. § 1154(a)(1)(A)(i) specifies that "[a]ny citizen of the United States claiming that an alien is entitled to . . . an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification."  8 U.S.C. § 1154(b) states that:

> After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

Regarding the denial of I-130 petitions on the basis of sham marriage, 8 U.S.C. § 1154(c) states:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the

immigration laws.

Several regulations provide guidance on the interpretation of these statutes.  8 C.F.R. § 204.2(a)(2) requires evidence to support a petition for a spouse, including evidence of United States citizenship and evidence of the marital relationship, such as a certificate of marriage issued by civil authorities and proof of the legal termination of all previous marriages.  8 C.F.R. § 204.2(a)(1)(ii) states that there must be "substantial and probative evidence" of an immigrant's attempt or conspiracy to enter into a marriage for the purpose of evading immigration laws for the director to deny an I-130 petition.  Finally, 8 C.F.R. § 204.2(a)(1)(i)(B)[5] lists the "types of documents which may establish that [a] prior marriage was not entered into for the purpose of evading the immigration laws," including:

> (1) Documentation showing joint ownership of property;
> (2) A lease showing joint tenancy of a common residence;
> (3) Documentation showing commingling of financial resources;
> (4) Birth certificate(s) of child(ren) born to the petitioner and prior spouse;
> (5) Affidavits sworn to or affirmed by third parties having personal knowledge of the bona fides of the prior marital relationship. . . .
> (6) Any other documentation which is relevant to establish that the prior marriage was not
>  entered into in order to evade the immigration laws of the United States.[6]

---

[5] Although 8 C.F.R. § 204.2(a)(1)(i)(B) applies specifically to a factual scenario not present in this case, it is still helpful to an understanding of what types of documents are relied upon as evidence of a good faith marriage.

[6] In addition, 8 C.F.R. § 216.5(e)(2), pertaining to applications for hardship waivers under 8 U.S.C. § 1186(c)(4)(B) based upon the petitioner's claim that the marriage was entered into in good faith, states:

> In considering whether an alien entered into a qualifying marriage in good faith, the director shall consider evidence relating to the amount of commitment by both parties to the marital relationship.  Such evidence may include--
> (i) Documentation relating to the degree to which the financial assets and liabilities of the parties were combined;

Although no circuit court has examined the precise issue posed in this case, several courts have examined the good faith marriage determination.  The First Circuit has held that the determination as to whether an individual married in good faith is not a determination "that historically has been regarded as entirely discretionary."  Cho v. Gonzales, 404 F.3d 96, 100 (1st Cir. 2005).  "Rather, it is a question the resolution of which has been regarded as circumscribed by a legal standard.[7]  It also is a question whose resolution is informed by objective regulatory criteria . . . ."  Id. at 100-01 (internal citations omitted, footnote added).  The Eighth Circuit, on the other hand, has recently stated that "[w]hether [a] qualifying marriage was entered into in good faith by [an] alien spouse is a discretionary factual determination of the IJ."  Suvorov v. Gonzales, 441 F.3d 618, 622 (8th Cir. 2006); see also Ignatova v. Gonzales, 430 F.3d 1209, 1213 (8th Cir. 2005) (holding, with respect to an underlying question as to whether there was a good faith marriage, "we lack jurisdiction to review questions of fact underlying discretionary decisions of the Attorney General").

In determining whether or not jurisdiction exists, the Court is mindful of "the strong presumption in favor of judicial review of administrative action."  INS v. St. Cyr, 533 U.S. 289, 298 (2001).  "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative actions is controlling."  Ismailov v. Reno,

---

(ii) Documentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence;
(iii) Birth certificates of children born to the marriage; and
(iv) Other evidence deemed pertinent by the director.

[7] The "central question" has long been "whether the bride and groom intended to establish a life together at the time they were married."  Matter of Laureano, 19 I. & N. Dec. 1, 2-3 (BIA 1983), citing Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975).

263 F.3d 851, 854 (8th Cir. 2001).

Defendants rely heavily on this Court's decision in <u>Ginters v. Cangemi</u>, 419 F. Supp. 2d 1124 (D. Minn. 2006) to support their contentions.  Ginters filed a habeas petition challenging the denial of his wife's I-130 petition, which was denied on the basis that Ginters had previously entered into a sham marriage for the purpose of circumventing the immigration laws.  419 F. Supp. 2d at 1127-29.  The Court stated, "While a director may have no choice but to deny an immigrant's I-130 petition once it has been determined that the immigrant previously entered into a sham marriage, the director does have discretion to decide in the first instance whether or not a sham marriage has occurred."  <u>Id.</u> at 1130.  The Court then stated, "Because the determination of whether Ginters had entered into a previous sham marriage for purposes of deciding whether to grant or deny Ginters' I-130 petition was a discretionary decision, this Court does not have jurisdiction to review it pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)."  <u>Id.</u>

In <u>Ginters</u>, a valid order of removal had already been issued and affirmed by the Eighth Circuit.  <u>Id.</u> at 1131.  8 U.S.C. § 1252(a)(5) provides that courts of appeals are the sole and exclusive means for judicial review of an order of removal.  Concluding that even if the I-130 determination was not a discretionary decision, the Court lacked jurisdiction pursuant to 8 U.S.C. § 1252(a)(5) because Ginters asked it to do indirectly what it could not do directly: "[A] review of [Mrs. Ginters's] I-130 petition by this Court resulting in a favorable determination for Ginters would indirectly challenge the validity of the removal order."  <u>Id.</u> at 1131.  In an abundance of caution, and based on its reading at the time of the statutes and cases at issue, this Court transferred <u>Ginters</u> to the Eighth Circuit.  <u>Id.</u> at 1132.  The Eighth Circuit apparently disagreed with this Court's jurisdiction determination, as it dismissed without explanation

Ginters's petition for review for lack of jurisdiction.  Ginters v. Gonzales, No. 06-1673 (8th Cir. July 28, 2006).  As a result, Ginters is of little precedential value.

Upon further examination of the applicable statutes and case law in the instant case, the Court concludes that the good faith marriage determination is not a discretionary decision barred from review by 8 U.S.C. § 1252(a)(2)(B)(ii).  The good faith marriage determination requires "some subjective weighing of the evidence."  Ginters, 419 F. Supp. 2d at 1130.  However, 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar jurisdiction over all discretionary decisions, but rather only those discretionary decisions "the authority for which is specified under this subchapter to be in the discretion of the Attorney General."  See Singh v. Gonzales, 404 F.3d 1024, 1026-27 (7th Cir. 2005) (concluding that jurisdiction to review the BIA's denial of a motion to reopen exists because the language of 8 U.S.C. § 1229a(c)(6) "only describes the contents of motions to reopen and the filing deadlines" without "any specific language entrusting the decision on a motion to reopen to 'the discretion of the Attorney General'"); Soltane v. United States Dep't of Justice, 381 F.3d 143, 147-48 (3d Cir. 2004) (holding that a preference visa determination under 8 U.S.C. § 1153(b)(4) is not a discretionary decision under § 1252(a)(2)(B)(ii) after noting the mandatory, specific language of the statute and no explicit reference to discretion).  An examination of the applicable statutes and regulations reveals none of the discretionary language that typically implicates 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdictional bar.  Instead, 8 U.S.C. § 1154(b) states, "After an investigation of the facts in each case . . . the Attorney General **shall**, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition."  8 U.S.C. § 1154(c) states: "[N]o petition **shall** be approved if . . . (2) the Attorney

18

General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."  Indeed, a review of various sections of the INA in which the Attorney General's discretion is explicitly specified reinforces the conclusion that if Congress had intended for the sham marriage determination to be an unreviewable discretionary decision, it certainly knew how to say so.  See Zafar v. United States Attorney Gen., 461 F.3d 1357, 1361 (11th Cir. 2006) (citing statutes: 8 U.S.C. § 1184(d) ("[T]he Attorney General **in his discretion may** waive the requirement that the parties have previously met in person.") (emphasis added); 8 U.S.C. § 1181(b) ("[R]eturning resident immigrants . . . **may** be readmitted to the United States by the Attorney General **in his discretion** without being required to obtain a passport.") (emphasis added); 8 U.S.C. § 1221(j) ("The Attorney General **may** authorize immigration officers to record the following information . . . .") (emphasis added)).

Furthermore, the sham marriage determination is not a matter of pure discretion because it is circumscribed by legal standards.  Longstanding precedent reveals that the central question is "whether the bride and groom intended to establish a life together at the time they were married."  Matter of Laureano, 19 I. & N. Dec. at 2-3, citing Bark, 511 F.2d at 1201.  Also, applicable regulations list the type of evidence that can be considered in making the sham marriage determination.  8 C.F.R. §§ 204.2(a)(1)(i)(B), 204.2(a)(1)(ii), 204.2(a)(2); 216.5(e)(2). Keeping in mind "the strong presumption in favor of judicial review of administrative action," the Court concludes that although the sham marriage determination may involve fact-finding and some administrative latitude, it is not the type of discretionary decision barred from review by 8

U.S.C. § 1252(a)(2)(B)(ii), and this Court's jurisdiction is not precluded on this basis.[8]

### 2.      Exhaustion of Administrative Remedies

Defendants also argue that the Court lacks jurisdiction because the Sabharis failed to

exhaust administrative remedies for the third I-130 petition and the remanded second I-130

petition by not appealing the denials to the BIA.  The Sabharis argue that their failure to exhaust

administrative remedies is excused because of futility.  See Frango v. Gonzales, 437 F.3d 726,

729 (8th Cir. 2006) (stating that failure to exhaust may be excused where the party failed to raise

an issue because to do so would have been futile).

The Court agrees that exhaustion would be futile because the Sabharis' petitions have

been denied every time they have been before the INS or BIA, and there is no indication that the

BIA would reach a different result this time.  As a result, judicial economy would not be served

by requiring exhaustion of administrative remedies in this case because a presumably adverse

decision by the BIA would likely result in the Sabharis filing a lawsuit in this Court, but at a still

---

[8] Defendants argue that the Eighth Circuit's decision in Suvorov dictates the result of this case.  However, Suvorov is distinguishable.  In Suvorov, the Eighth Circuit concluded that it lacked jurisdiction to review the denial of a hardship waiver because a waiver under 8 U.S.C. § 1186a(c)(4)(B) is solely within the Attorney General's discretion.  441 F.3d at 621-22.  The court explicitly stated, "We lack jurisdiction to review questions of fact underlying discretionary decisions of the Attorney General."  Id. at 622.  In Suvorov, the discretionary decision was the hardship waiver and the underlying factual issue was the good faith marriage determination.  Id.  By contrast, in this case, the good faith marriage determination is not an underlying issue, but rather is the issue.  Also, as stated above, while the good faith marriage determination does involve some fact-finding, it is not the type of discretionary decision barred from review by 8 U.S.C. § 1252(a)(2)(B)(ii), and it is also governed by a legal standard.  Moreover, the Suvorov court's intimation that credibility determinations are not reviewable is not controlling in the context of this case because Suvorov involved a hardship waiver determination pursuant to § 1186a(c)(4)(B), which specifically states that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General."  See Suvorov, 441 F.3d at 622 (citing Ignatova, 430 F.3d at 1213 n.4 (citing Urena-Tavarez v. Ashcroft, 367 F.3d 154, 159-61 (3d Cir. 2004))).

later time in this almost twelve-year saga of Sabhari's I-130 status.  See Mo. v. Bowen, 813 F.2d 864, 872 (8th Cir. 1987).  In addition, the factual record is extensively developed and the issue before the Court is primarily legal—whether the INS's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  See id. at 871.  Also, this case "is not of such a nature that will encourage flouting of the administrative processes" because few if any cases will raise issues about whether a marriage which has endured over eleven years is a sham, and the Sabharis have been before the INS and BIA on many previous occasions.  See id. The Sabharis' failure to exhaust administrative remedies does not preclude this Court's jurisdiction.

### 3.    Res Judicata

Defendants argue that the Sabharis' constitutional claims are barred by res judicata. Claims are precluded by res judicata if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.  Montana v. United States, 440 U.S. 147, 153 (1979); Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989).

Res judicata applies to the Sabharis' constitutional claims.  The prior judgment was rendered by this Court.  The Court dismissed with prejudice the Sabharis' due process and equal protection claims, concluding that the Sabharis had alleged insufficient facts to support a violation of the Equal Protection Clause of the Fourteenth Amendment, and that an alien does not have a constitutionally protected right to an adjustment of status under the Due Process

Clause.  <u>Sabhari</u>, 2005 WL 1387595, at *9.  The same parties were involved in the prior action.[9]

The prior action and this action arise from the same nucleus of operative facts, with the

exception of the addition of sister Saheri's recantation and the INS's new denial after remand of

the Sabharis' second I-130 petition.  <u>See</u> <u>Murphy</u>, 877 F.2d at 684-85 ("[W]hether two claims

are the same for res judicata purposes depends on whether the claims arise out of the same

nucleus of operative fact or are based upon the same factual predicate.").  The circumstances

have not significantly changed to convince this Court to reverse course on its prior decision on

the Sabharis' constitutional claims, and accordingly, the Sabharis' constitutional claims are again

dismissed with prejudice.

### 4.      Remaining Claim

The Sabharis' APA claim, however, remains for review.  The Court has jurisdiction over

the Sabharis' remaining claim of violation of the INA pursuant to the APA, 5 U.S.C. §§ 701-06,

and general federal question jurisdiction, 28 U.S.C. § 1331.  <u>See</u> <u>Sabhari</u>, 197 F.3d at 943.

### C.      Merits

The Sabharis argue that the INS has violated 8 U.S.C. § 1151(b)(2)(A)(i) by failing to

approve Sherry's I-130 petition even though the Sabharis have proven by a preponderance of the

evidence that they share a bona fide marriage.  The Sabharis also argue that the INS's decision is

contrary to well-established precedent and federal regulations, and is arbitrary and capricious

because it is inconsistent with how the INS typically evaluates documentary evidence in support

of visa petitions.  In addition, the Sabharis argue that the INS's sham marriage determination is

---

[9] The only change was a technical one of Thomas Ridge to Michael Chertoff as Secretary
of the Department of Homeland Security.

not supported by substantial and probative evidence.[10]  Defendants do not respond specifically to the Sabharis' arguments, but instead rely on the jurisdictional arguments made in their Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 13].  Opp'n Mem. [Docket No. 22] at 1-2.  In their Reply Memorandum [Docket No. 28], Defendants argue that the INS's sham marriage determination was supported by substantial and probative evidence, and the INS's denials of Sherry's I-130 petitions were not arbitrary or capricious, an abuse of discretion, or a misapplication of statute.

"In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought" by a preponderance of the evidence.  Matter of Patel, 19 I. & N. Dec. 774, 782 (BIA 1988).  An I-130 petition will not be approved if the alien has entered into a sham marriage.  8 U.S.C. § 1154(c).  The "central question" for determining whether a sham marriage exists "is whether the bride and groom intended to establish a life together at the time they were married."  Matter of Laureano, 19 I. & N. Dec. at 2-3, citing Bark, 511 F.2d at 1201.  "The conduct of the parties after marriage is relevant to their intent at the time of marriage."  Id. at 3.  A sham marriage determination must be supported by substantial and probative evidence before it can form the basis for an I-130 petition denial.  8 C.F.R. § 204.2(a)(1)(ii); Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990).

This case has dragged on for over eleven years.  In the meantime, the Sabharis have

---

[10] The Sabharis also argue that 8 U.S.C. § 1154(c)(2) can not be applied to deny Sherry's second I-130 petition because the Sabharis' multiple I-130 petitions are all based on the same marriage and the same petitioner.  See Matter of Isber, 20 I. & N. Dec. 676, 678-79 (BIA 1993).  However, Isber acknowledged that the language of 8 U.S.C. § 1154(c)(2) was susceptible to an interpretation that it also applied to subsequent I-130 petitions based on the same marriage, id. at 678, and as this Court found, "[§ 1154(c)(2)] clearly provides authority for the denial" of Sherry's subsequent I-130 petitions.  Sabhari, 2005 WL 1387595, at *7.

stayed married the entire time.  In the most recent chapter of this long and complicated saga, the case was remanded back to the CIS for reconsideration of its denial of the Sabharis' I-130 petitions.  The Court asked the CIS to particularly consider the length of the Sabharis' marriage, Saheri's recantation,[11] and the motives for the initial statements of Mohammed, Sapari, and Saheri.  In the face of strong evidence that Sabhari and Sherry have a legitimate marriage, and that Sabhari's family members cast aspersions on his marriage due solely to their own anger and personal motivation at that time to harm Sabhari, the District Director yet again denied Sherry's I-130 petition on the basis of sham marriage.  While the District Director may have initially had a basis to deny Sherry's I-130 petitions, that basis has dissipated with the family members' subsequent recantations,[12] examined in the light of the family members' personal motivations to spread lies about Sabhari.

The Sabharis have submitted extensive documentation in support of their nearly twelve-year marriage, including a marriage license, joint lease and purchase agreements, joint income tax returns, joint bank statements, joint credit card accounts, statements from friends and family

---

[11] Defendants continually insist that Saheri's recantation was never before the INS on any of Sherry's I-130 petitions.  "It is a basic principle of administrative law that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based.'"  Robinette v. Commissioner, 439 F.3d 455, 459 (8th Cir. 2006) (citation omitted).  However, in the Court's previous decision, the case was specifically remanded to the CIS for consideration of, *inter alia*, Saheri's recantation and the length of the marriage.  Therefore, Defendants can no longer claim that such evidence is outside the scope of their review.

[12] The only family member that has not recanted is Dana Sapari, Matt Sapari's ex-wife. However, Dana wrote her negative letter about Sabhari while she was still married to Sapari, and while her husband and Sabhari were engaged in a bitter lawsuit.  Sapari Aff. ¶¶ 28-33.  Matt and Dana Sapari divorced in 2001, and based on the circumstances, it is not surprising that she has not recanted her previous statements.

24

members, and pictures of the Sabharis together, all of which confirm the bona fide nature of the

marriage.  Even the INS's own unannounced 7 a.m. bed check on March 21, 2005 resulted in

finding the Sabharis at home together.  The Sabharis' evidence, viewed in the totality of the

circumstances and in light of the applicable federal regulations, supports a conclusion that they

intended to establish a life together in 1995 when they were married.

The INS's sham marriage determination is not supported by substantial and probative

evidence, and therefore the denial of Sherry's second and third I-130 petitions is contrary to law.

It was arbitrary, capricious, and an abuse of discretion for the INS to hold steadfastly to their

previous sham marriage determination in the face of recantations from the family members that

initially cast doubt on the Sabharis' marriage, and strong evidence that the Sabharis' marriage is

bona fide.  The INS did not give proper weight to the recantations or the length of the marriage

in making the sham marriage determination, and the INS's conclusion, based on the length of the

Sabharis' marriage, that the Sabharis' "exist as a partnership . . . in the financial sense" and are

"compatible in the business sense" does not articulate a satisfactory explanation for the INS's

decision.  As a result, this case is remanded back to the CIS with instructions to grant Sherry's

second or third I-130 petition, in conformance with this Order.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. The Sabharis' Motion for Summary Judgment [Docket No. 17] is **GRANTED**;

2. Defendants' Motion for Summary Judgment [Docket No. 11] is **DENIED**;

3. This case is **REMANDED** to the CIS to **GRANT** the Sabharis' I-130 petition.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 30, 2007.